UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MITSUI OSK LINES, LTD.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-1868 |
| | § | |
| **MAK TRANSPORT, INC.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. # 33). For the reasons set forth below, Plaintiff's motion is **DENIED**.

### I. Background

Mitsui OSK Lines, Ltd. ("Mitsui") entered into a contract with MAK Transport, Inc. ("MAK") to transport 40-foot shipping containers from the Port of Houston to Mission, Texas. Mitsui was responsible for shipping the containers from Top Form Brassiere Co., Ltd. in Bangkok, Thailand, to the Port of Texas, where MAK would then take custody and control of the containers and deliver them to VF Intimates, L.P. ("VFI") in Mission, Texas.

On or around December 6, 2003, one such container containing women's brassieres was stolen from MAK's storage facility. To date, neither the container nor its contents have been recovered. MAK had insurance coverage on the containers for "textiles and fibers" valued up to $100,000, but the policy did not cover "garments" such as brassieres.

As a result of the theft, VFI, the intended cargo recipient, made a claim against Mitsui for the loss of the container. On March 3, 2005, Mitsui paid VFI the sum of $152,384.43, the value of the brassieres. Mitsui then filed suit against MAK on June 5, 2005, both on its own behalf and

standing in VFI's shoes, for negligence, breach of contract, breach of express and/or implied warranties, and conversion and/or fraud. Mitsui has moved for summary judgment on the negligence and breach of contract claims, arguing that no genuine issue of material fact exists as to MAK's liability on these grounds.

## II. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

## III. Negligence Claim

Mitsui argues that MAK is liable for the loss due to negligence on a bailment theory. A bailment arises when property is delivered to a bailee in trust to accomplish particular ends.[1] *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 588 (5th Cir.

---

[1] The Fifth Circuit has defined a bailment as:
> A delivery of goods or personal property, by one person to another, in trust for the execution of a special object upon or in relation to such goods, beneficial either to the bailor or bailee or both, and upon a contract, express or implied, to perform the trust and carry out such object, and thereupon either to redeliver the goods to the bailor or otherwise dispose of the same in conformity with the purpose of the trust.

*T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 588 (5th Cir. 1983) (quoting Black's Law Dictionary 129 (5th ed. 1979)).

2

1983). Here, the 40-foot shipping containers were delivered to MAK in trust for delivery to Mission, Texas, and thus a bailment was formed. This bailment could be governed by either maritime law or Maryland law: Maritime law could apply because the contract between Top Form Brassiere Co. and VFI was a "through" bill of lading. *See Norfolk S. Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 25-27 (2004) (defining "through" bills of lading as those in which "cargo owners can contract for transportation across oceans and to inland destinations in a single transaction" and applying maritime law "so long as a bill of lading requires substantial carriage of goods by sea"). Alternatively, Maryland law could apply because the UIIA contract between Mitsui and MAK specified that Maryland law governs all disputes arising under the contract. Because neither party argues that the difference between the maritime and Maryland law is determinative, and because their treatment of bailments is very similar,[2] the Court will apply maritime law to this summary judgment motion.

Under maritime law, when a bailee receives the bailed property in good condition but it is then damaged or lost while in the bailee's possession, a presumption arises that the bailee was negligent. *Leather's Best, Inc. v. S.S. Mormaclynx et al.*, 451 F.2d 800, 812 (2d Cir. 1971). The burden of production then shifts to the bailee to show either how the loss occurred and that it was not attributable to his negligence, or that he exercised such care that, regardless how the loss occurred, it could not have been caused by any negligence on his part. *Id.*

---

[2] Under maritime law, a bailor makes out a *prima facie* case of negligence by showing delivery of goods to the bailee and failure to return the goods at the required time. *Leather's Best, Inc. v. S.S. Mormaclynx et al.*, 451 F.2d 800, 812 (2d Cir. 1971). Then the burden of production shifts to the bailee to show that regardless of the reason for the failure to return the goods, it could not have been caused by any negligence on his part. *Id.* The standard under Maryland law is very similar: a bailor has the burden to show that the property was delivered to the bailee in good condition and either failure to return the goods or redelivery in damaged condition. *Commodities Reserve Corp. et al. v. Belt's Wharf Warehouses, Inc. et al.*, 529 A.2d 822, 824 (Md. 1987). Then the burden of proof shifts to the bailee to show that it exercised due care (i.e., could not have been negligent) with respect to all the possible causes for the loss or damage. *Id.* at 825.

In this case, Mitsui has made out a prima facie case that MAK was negligent. It is undisputed that the 40-foot container of brassieres arrived at MAK's facility in good condition and was subsequently stolen from its property. Thus, the burden of production shifts to MAK to show that the theft of the container was not or could not have been caused by any negligence on its part.

To make this showing, MAK points to an interrogatory response in which it detailed the security measures in place at its storage facility (Def.'s Opp'n to Pl.'s Mot. Summ. J. 3.). The storage yard was surrounded by an eight-foot chain link security fence with barbed wire on top, a gate secured with a lock, and a twenty-four hour business across the street that permitted public observation of the storage yard. MAK secured every trailer not attached to a truck with a pin lock, and any trailer containing cargo that was in the storage yard for an extended period of time was backed into another trailer so that the doors could not be swung open. It put padlocks on all cargo doors, and MAK asserts that it had never had a theft incident prior to the one at issue in this case. Based on this evidence, a reasonable jury could conclude that the theft of the container could not have been caused by any negligence on MAK's part. *See Tokio Marine Mgmt., Inc. v. M/V Zim Tokyo*, 1993 WL 322869 (S.D.N.Y. Aug. 17, 1993) (finding a jury question as to whether theft of goods could have been caused by negligence when defendant's storage facility had a barbed wire fence, security guards, and no prior incident of armed robbery). Viewing this evidence in the light most favorable to MAK, the Court finds that a genuine issue of fact exists as to whether MAK has rebutted the presumption that it was negligent in storing the container in its yard. Thus, Mitsui's motion for summary judgment on its negligence claim is **DENIED**.

## IV. Breach of Contract Claim

Mitsui also claims that it is entitled to summary judgment because, under the UIIA contract, MAK agreed to indemnify Mitsui against any claims for loss, and because MAK failed to obtain liability insurance as required by the UIIA contract.

As to the alleged failure to obtain liability insurance, the UIIA contract requires MAK to obtain insurance "covering all risks of loss or damage to cargo." (Pl.'s Mot. Summ. J., Ex. A.) Both parties agree that MAK did obtain $100,000 of insurance coverage for "textiles and fibers," but no insurance coverage for "garments," which are generally of greater value. MAK asserts in an interrogatory response that the reason for this discrepancy is that Mitsui's agent specifically represented to it that the cargo was *unfinished* textiles and fibers. (Def.'s Opp'n to Pl.'s Mot. Summ. J., at 4.) Furthermore, the Order Sheet prepared by Mitsui lists the cargo as "Textiles & Fibers." (Def.'s Opp'n to Pl.'s Mot. for Summ. J., Ex. 4.) Thus, MAK claims that there is a genuine issue of fact as to whether it obtained the required insurance stemming from Mitsui's alleged misrepresentation of the nature of the cargo.

Mitsui argues that it had no duty to describe the cargo with any particularity. If this were the case, however, no transport company could ever obtain insurance covering *all* risks of loss or damage to cargo, because different types of cargo can have vastly different values. As in this case, for example, a shipment of unfinished textiles and fibers has a much lower value than a shipment of finished women's garments. Thus, the Court finds no merit in Mitsui's position that it was not required to reveal the exact nature of the cargo to MAK.

It could be, however, that Mitsui's description of the cargo as "Textiles & Fibers" on the Order Sheet did encompass both finished and unfinished product, including women's brassieres. Yet MAK asserts that Mitsui's agent orally represented that the textiles and fibers were

5

*unfinished*. Thus, if MAK's evidence is viewed in the light most favorable to it, there is a genuine issue of fact as to whether MAK obtained the appropriate insurance necessary to comply with the UIIA contract. Mitsui's motion for summary judgment on this ground is therefore **DENIED**.

As to MAK's agreement to indemnify Mitsui against any claims for loss arising out of the contract, the duty to indemnify presupposes that there was no culpable conduct on the part of Mitsui, which is a question of fact that cannot be decided on a motion for summary judgment. Mitsui's motion for summary judgment on this ground is therefore also **DENIED**.

## V. Conclusion

Because there are material issues of fact as to whether MAK's negligence could have been responsible for the theft of the container, whether MAK obtained the insurance required by the UIIA contract, and whether MAK has a duty to indemnify Mitsui, Mitsui's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** this 17th day of October, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT**